The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Craig H. D. Armon presiding. Morning, Counsel. Good morning, Your Honor. Good morning, Justice. We'll call 4-20-0190 Dicus et al. v. County of Edgar. Counsel for the Appellant, if you could please state your name for the record. William Faber. Thank you, Mr. Faber. Counsel for Appellee, could you please state your name for the record. Gerard Cook. Thank you, Mr. Cook. Mr. Faber, if you'd like to proceed. Yes, may it please the Court. Counsel. Mr. Cook, in this case, Your Honor, there is an overarching duty of the county to maintain the road in a safe condition for intended users. Edgar County, in this case, claims discretionary immunity from the allegations that its road crew negligently and incompletely compacted the infill of the trench of the road repair work. We all agree, Your Honor, that the standard that must be met, or the elements that must be met, are identified in the Haranik case, because both parties have cited it to the Court, and that a public entity must provide proof that the conduct of its workers, here the road crew, was a determination of government policy and an exercise of discretion. A public entity, further, Your Honor, claiming immunity under Section 2201, must present evidence that the workers made conscious decisions with regard to their work. Andrews says in paragraph 46, and this is very, very important, regarding the standard of proof required to satisfy the exercise of discretion element, This Court, meaning the Supreme Court, expressly held that a local public entity claiming immunity under Section 2201 must present evidence that it made a conscious decision with respect to the acts or omissions alleged in the complaint. Failure to do so is fatal to the claim. Your Honor, we present three points to win our appeal. The first is with regard to missing evidence or missing witnesses. Although, in this case, the law is clear that Edgar County bears the burden of proof to show entitlement to the immunity claim, it chose not to present any evidence from the road crew who did the actual work. No evidence to illustrate the decisions and the alternatives faced by the crew and how they made judgments or balanced interests with respect to the needs of the community while executing the repair work. Our second point, Your Honor, is that- I don't know if it's pronounced Mahan or Mohan, but Mr. Mohan. And did he really offer testimony about exactly what the road crew did or was it more along the lines of, this is what I told them to do? And so we're looking at a situation where they obviously had to exercise discretion because he did not give them a detailed plan or specific directions on how they were to do what they were setting out to do. Sure, Your Honor. Mr. Mohan's testimony comes, I guess, as really speculative because he was not present at any time during the course of the work. Over the course of the years, he had developed a general plan for this dump method, which included the various steps involved. And while it is true that he said that he thought his crew had exercised some discretion as to how they filled in the CI6, how much they put it in and how they tapped it down, there is no evidence presented, for example, that the road crew followed his plan in any way, shape or form. Although Mr. Mohan said that they were supposed to roll it with a truck and tap it with a hoe, there is absolutely no evidence that the crew followed Mr. Mohan's directions. I note, Your Honor, that Judge Sick had mentioned in his order that the DAICAS, the appellants, had failed to show that the road crew did not follow Mr. Mohan's plan in any way, but that is not our burden. It was up to Edgar County to show that its crew did in fact follow the outline of the plan. And it is our position, based on our expert evidence, that the compaction was incomplete because of the rapidity and the proximity in time in which there was a significant settlement that presented a road hazard to motorcycles. Mr. Faber, may I ask a question of you in regards to Mr. Mohan's testimony? I think you argue in your brief that this court should not consider Mr. Mohan's testimony in regards to the road crew's actions because it lacked foundation. Is that right? That is correct, Your Honor. Did you claim in the trial court that there was a lack of foundation and moved to strike that portion of Mr. Mohan's testimony from the court's consideration in the summary judgment process? I made the argument to the court, Your Honor, that Mr. Mohan had no personal knowledge and then could not support the elements of discretion. I could find that in my arguments, Your Honor. But the judge asked me about that, saying that, you know, what proof do we have that they didn't follow the plan? And then I argued to the court that, well, Your Honor, there is no evidence from the crew that Mr. Mohan's plans were followed. And then the court said to me, well, he went, Mr. Mohan went and inspected it, so he found it okay. And I said to the court, Mr. Mohan did not have x-ray vision eyes. He could not perceive down that four-foot depth of trench to ascertain whether the compaction was complete or not. I'll just point out that case law would indicate that in the absence of a motion to strike and a ruling on that in the trial court, a claim of error in regards to lack of foundation would be forfeited on review. Yes, Your Honor, but I would say to the court that the point still holds that it was the burden of proof for Edgar County to present competent evidence of the decisions that were made by the crew, and they have not presented any evidence along those lines. I am merely pointing out that Mohan's testimony cannot stand as evidence of the decisions, the policy enactment of the crew. And that gets me back to my question. Does his testimony need to stand as that evidence in the situation where he didn't tell them specifically how many layers to put in? He didn't tell them how many times to tamp it. So doesn't that illustrate that they had to make that decision? Your Honor, it would be our position that the that the Edgar County presented admissions that the road work that was being done this day or that it is in this event was routine work that had been done 30 or 40 times in the past. And there was nothing special or nothing that was unique about the work that was presented. In fact, Your Honor, if I may point out that one of the elements under Herrick is that we have to show that the crew exercise the policy. And when I asked about policy at deposition page 29, with regard to the repair work that the crew did on Wednesday, May 2nd, did they enact or make any decision with regard to the policy as to the way the repair work would be done? Answer no. Had the crew done any culvert work prior to this and similar before the state of the wreck? Yes, they had done 30 to 40 jobs. Question, would those project be routine and be done in a similar manner that they did the project that was involved in this wreck? Yes. And that brings me to another question. So it's your position and I'll hear from Mr. Cook when it's his turn. It's your position that not only do we have to have a showing that the crew exercise discretion, but also that they were involved in determining policy. Yes, Your Honor. And I believe with this admission, if it is admitted under Rule 801 of the Illinois Rules of Evidence, that that admission by Mr. Mohan that the crew did not enact any policy with regard to its work closed the door, closed the door tight and solidly with regard to their claim for discretionary immunity. What Mr. Mohan should have said, oh no, of course they enacted policy. They had a unique situation. They had to use their judgment all the way, kind of like in the Doyle case when they were called on to make special considerations on a very unique project. This in no way was a unique project. It was very routine, done 30 or 40 times within the past year. So in no way does it fit with, for example, within the framework of the Doyle case upon which they rely. What about the Roble case, though? We're talking about potholes in that case. And there's a discussion in there about the fact that the crew working on the potholes that they did, what they did could be characterized as a policy determination, as well as an exercise of judgment in deciding whether or not to, how to administer or put on this cold patch as they described it. Right. Well, Your Honor, with regard to the Roble case, which Edgar County relies upon, the plaintiff city of Chicago presented evidence from the road crew and documentary evidence to show that the work was done. And based upon the specific and detailed evidence presented to the court, the court ruled that it was discretion. In contrast to the case here, Edgar County chose not to present that type of evidence from the crew. They presented not one shred of documentary evidence to show an enactment of policy or an exercise of discretion. So their vessel is empty with regard to the required proof under the Harnik case. Mr. Faber, may I ask you another question? What is the specific act of negligence being claimed against the road crew? What is it specifically that is claimed to have been done negligently? I believe our complaint alleges that the compaction work was incomplete that allowed for the undue settlement and then the scattering of the undue scattering of the CA6 rock along the roadway. Those were the allegations of the complaint. Well, in terms of your expert, because it sounds like your expert is the only witness, the only evidence that you're relying on in support of both your motion for partial summary judgment and in defending defendant's motion for summary judgment. What testimony or evidence do you have from your expert as to what the road crew specifically did not do or did in a negligent fashion? His testimony, Mr. Billing, the engineer's testimony was that the compaction was incomplete. That in fact, it really wasn't compaction. It was more just a consolidation of bringing the particles together, but not filling in the voids to prevent settlement. He said that because it was incompletely compacted, it allowed for the settlement. He had identified steps that should have been taken, which were not testified to even under the dump method to prevent undue settlement, such as slicing in the CA6, stepping in with your feet and shovel to make sure that the material was firmly embedded under the pipe so that it would not settle. So even though the crew may have taken a more, shall we say, general approach to compaction under the dump method, there were still steps that were necessary to take, even under the dump method, to prevent this type of hazard from arising. Well, correct me if I'm wrong. I'm looking at your brief, your opening brief at page 27, and it sounds like Mr. Billing's indicated that subsidence so soon after the road work was done is evidence of an insufficient compaction performed by the road crew. And that sounds like a Ray Sipsa argument, where it's the condition after the fact that, in his mind, points to some sort of negligence on the part of the road crew. Did he have any specific evidence of the acts of the road crew in the performance of their work? Does he express an opinion that their acts, some identifiable acts on the part of the road crew, led to this condition? Well, Your Honor, he said that the depression represented an unreasonably dangerous condition. It was a large defect. He said it was unusual to come across a two-inch depression on this chip, and that this depression was a hazard to motorcycles more so than automobiles. The condition in the photograph, he said, was created by the road crew when they put the culvert in. It was a naturally occurring situation. He said that just based upon the photographs that he saw, and the rapidity and the amount of settlement, and the severity of the hazard, indicated to him, based on his experience, that the settlement was too much and was premature and was based upon, in his experience, inadequate and insufficient compaction. That sounds like a Ray Sipsa argument, where the condition itself points to negligence as having been the cause. But in this case, you have Mr. Billings agreeing with Mr. Mohan's approach, and that with that approach, there will undoubtedly be settlement. So, I'm not sure that you can rely on that type of a Ray Sipsa argument here. Well, Your Honor, Ray Sipsa would require the defendant to be in complete control of the situation the whole time. And I think, Your Honor, the Ray Sipsa argument that the court raises goes more to the question of negligence than to the issue that's presented here, which is whether or not Edgar County has established the two-pronged test to establish its entitlement to discretionary immunity. So, when we talk about negligence, Your Honor, I believe we kind of wander from the mission that we have today, which is to ascertain whether or not Edgar County carried its burden of proof, which it simply could have done by presenting its road crew. Edgar County suggests in its brief that you don't even need to look at the argument regarding the road crews acts, because you start with Mohan's approach, which he detailed, and which involved discretionary decisions, and that Billings agreed that that approach was reasonable, and that that therefore immunizes the work that followed. What do you say to that? Your Honor, that's all the argument I have for the court this morning, and I want to thank the court for making special arrangements for this Zoom meeting under these extraordinary circumstances. All right. Thank you, Mr. Faber. You'll have an opportunity in rebuttal.  Good morning, Your Honor. I think the issues that we have before us today are really straightforward and rather simple. Plaintiff has acknowledged that the actions of Mr. Mohan in creating the method which the county used in its culvert repair operations was discretionary. It was that discretionary decision to use the dump, what has been known as the dump method, which resulted in the condition of the roadway at the time of the accident. The dump method was discretionary because the county had to exercise and weigh the competing factors of cost versus benefit. The road in question here is a very sparsely traveled rural road. Mr. Cook, let me ask you a question. As indicated by Mr. Faber, we're focusing on the actions of the road crew. Do you agree that it was your burden to show that the actions of the road crew in compacting the site, that they engaged in both the determination of policy and the exercise of discretion? Is that what you have to show? I would agree that we have to show that under one of the three theories under which we can prevail in this case. But the first overriding theory in this case is that the decision to Mr. Mohan in deciding what compaction methods were to be used were in fact discretionary. We don't have to prove that because the plaintiff has admitted it. And that method, the known consequence of using that method is that you will get some settlement in the using the dump method. It's the least expensive method of the available methods that can be used, but it does result in some settlement. And that's exactly what occurred here. Does that go to whether or not you're entitled to immunity for the actions of the road crew? Well, if the road crew followed the actions of the methods followed by the county, even if those methods were incorrect, because discretionary immunity applies, even if abused, then the immunity applies. Mr. Faber relies upon rank speculation to assert that something was done improperly by the road crew and that the road crew didn't adhere to what the plans and design were, the plan and designs developed by Mr. Mohan for the county. And he presents absolutely no evidence. We do make a prima facie case that they did comply with the plans and designs of Mohan because Mohan inspected this scene after the project was completed the next day and found it to be in compliance with his plans. The road was smooth. The dirt was built up on the sides the way it was supposed to be. So he said it was satisfactory. He also inspected the accident site immediately after the accident and said had he inspected it just before the accident, he wouldn't have done anything different because that's what they expected to happen in the course of utilizing this plan. Well, the difficulty I have is, as you mentioned, at the trial court level, the trial court could assume that the county was negligent. Right. And so that gets us to what do you have to show for immunity. So I really don't see the relevance of whether or not they followed the plan or whether or not Mr. Faber's expert agreed that was an appropriate plan. Don't we have to focus on whether or not the road crew in the compaction work, whether or not that was a policy determination and an exercise of discretion. And isn't all of this discussion about Mr. Mohan and his method and what decisions he made, isn't that irrelevant? I respectfully disagree, Your Honor. Mohan developed the plan, which was discretionary. The county had, there were various alternate ways that they could have done this project. And Hoyna's expert agrees with that. But they're not suing based on any allegation that Mohan, you know, failed to, that an act that he undertook engaged in determination of policy or the exercise of discretion. They don't have any qualms with anything Mr. Mohan did. I respectfully disagree with that, Your Honor, because they are complaining of inadequate compaction and Mohan described and developed a plan that provides for compacting the materials in certain ways. And that plan results in some settlement. They expect it. And that's what occurred here. I will also say, however, Your Honor, that certain aspects of the road crews activities were discretionary and left to the discretion of the road crew. And that is the amount of material they put into each fill, the type of fill that's used, that was decided by Mohan. But once the fill is put in under various layers, after various layers are asserted, which is left to the decisions of the road crew, that's discretionary. Then they tamp it with a backhoe bucket and pound it down with their backhoe bucket. And the number of times that it's pounded with a backhoe bucket is also a discretionary decision left to the road crew. And then they rolled this road with a 45,000 pound truck rollover multiple times. The number of times that the road is rolled with the truck is also left to the discretion of the road crew. So what policy determinations did the road crew make? The policy determinations are identical to those in the Robo case, which Your Honor mentioned earlier, where in the Robo case, they were fixing a pothole and the road crew had to determine how much moisture and old fill they were going to extract from the pothole before they put the new fill in. And that policy and discretion was left to the individual road crew members to decide in that particular pothole, how many times or how much material had to be removed and how much moisture had to be removed. Here in our case, the road crew had to decide at this particular site, you know, how much tamping was going to have to be done. How many, first of all, how many layers of material they were going to put in. And that's determined on the site by, you know, how the preceding layer goes in and how much they want to fill in on each fill. And then once it's filled up, the road crew has to pound it with the backhoe and they can, you know, they do a site visual observance as to how much pounding it needs. Is it pounded in well? And then they roll it with the truck and then they continue to roll it as many times necessary until they get that gravel to settle into the area that they're filling in. So those decisions were discretionary and left to the road crew. I'd like to interrupt you just for a moment, if you don't mind. Again, the inquiry when you get to the whether or not you have Immunity here is identifying what were the acts that we should be examining what what specific acts by the road crew should we be examining to determine whether or not they were ministerial or discretionary acts. And I still I haven't heard yet an argument and I haven't seen in the briefs or the record what specific acts have been identified, either in the pleadings or by way of evidence. That are claimed to have been done negligently. Can you put your plaintiff's hat on for a moment and just tell me what specific acts of negligence have either been asserted or established by the evidence in this case. Your Honor, I would say, putting on my plaintiff's hat. The only act of negligence that can be pointed to here, arguably, is whether or not a sign should have accompanied This construction project and we're asking We've acknowledged That is that that is not relevant to the argument here today. Right. Well, it's not relevant because the plaintiff admits that we're entitled to that immunity. Okay, so just on the narrow issue that we're here for then Today, what are the what is what are the assertions or the what is the evidence in regards to specific acts of negligence by the road crew. Well, that's the problem. Your Honor, it's all speculative on the part of the plaintiff because Mohan inspected the road after the project was done and said it complied with with his plans and what do you want it done. And let me We say Before you proceed, if you if you'd allow me before you proceed. Can you then go back to wearing the Edgar County had here. Was an assertion was an argument made or a request made in the summary judgment motion by Edgar County to grant summary judgment because of a lack of evidence as to specific negligence on the part of the, the road crew. Because you have to establish plaintiff would have to establish Negligence before you'd even get to whether or not those negligent acts should be immunized because of discretionary immunity. Our summary judgment motion was based upon the fact that even if we arguably were negligent that we're immune from that negligence or discretionary immunity plaintiffs asserting that the It is negligent to have this to which settlement in a runway. We're immune from that decision. And that posture. It seems like you end up shooting in the dark because you're saying we're immunized the road crews acts are immunized, but we don't know what the specific acts of negligent claim negligence are It seems like the the cart came before the horse there. Well, the, the, the plaintiffs expert argued that the road crews. Which should have gotten into the trenches and use shovels to move the backfill around During the process of construction. That's not what we do. That's not what we ever do. So wasn't they deviated from that process in this particular project deviated from the plans. That's part of the discretion. Of Mr. Mohan in the county when they develop the plan and to quote the trial court trial court said Regardless of the facts of this case, even daily inspections would not have caused Edgar County to change the condition of the road surface in question. As the condition of the roadway on the day of the accident was the expected result of an acceptable method of repair chosen by Edgar County. The fact that the plaintiff expert disagrees or would have done something different doesn't make the conduct any less discretionary so plaintiffs expert has a Theory that our plan should include road crews getting into these trenches to take undertake X to help it settle better. We disagree with that. It's not as though that was a deviation in this particular project. We never do that. That's not about. That's not our plan. If that is supposed to be done, then It's, it's a discretionary decision which is subject to immunity. Let me read to you at all. And we quoted in our brief the testimony of plaintiffs expert with regard to the road condition. And I asked him at his deposition. So you correct me if I'm wrong, your criticism of the condition of the roadway at the time of the accident. Was not the condition itself, but rather than it could not be perceived by a motorcyclist in time to react to it appropriately. Is that correct. Any answer. Correct. So he has no quarrel with the with the settlement of the current that occurred here. He just says that if you're going to use this dump method. The natural result of which is some settlement that you have to accompany the construction site with a sign to warn motorists of the approaching Site. We disagree with that. We think it was a minor two inch deviation, which is common in entire ship roadways that you have going to have too much depressions potholes deviations of that sort. But, you know, that's not before the court here are because we're immune from that decision, even if we should have had a son. So the long and the short of it is It's the point of fear, who is conducting rank speculation about what caused this depression and we inspected it afterwards and found it to be satisfactory. If he believed that there was something done inappropriately. That the plans were deviated from that the county established and he could have taken the depositions of these road crew individuals, they were all identified. He chose not to do that, put his head in the sand. And the fact of the matter is our plan went according to plan. Plaintiff's expert admits that the settlement that occurs using the dump method varies from case to case this settlement that occurs. Can take some time in some cases can happen quickly and others we it's this construction was done on a Wednesday. The accident occurred on Sunday. We had expected it once in between that time and road crews are not normally out over the weekends, so We got what we expected. And the question is what we expected was that the result of a discretionary decision of the county in developing their plan and design. That's not even an issue here because the plaintiff concedes we have discretion for that he's he is using rank speculation of some, quite frankly, some some crazy ideas about a deer carcass being tossed into the Into the construction project that You know, to show the absurdity of of what he's claiming here without any evidence. So, Your Honor, we, we believe that the trial courts decision should be affirmed because the decisions of the road crew and with regard to tamping Backfilling rolling were all discretionary decisions. Mr Mohan developed a plan which he used when which we expected settlement. That's exactly what we got. He inspected the The project after it was completed and found that the crew had complied with the plans and that the the Construction site was was satisfactory. The day after the accident. And if the plaintiff then believes that something else was the cause of this accident. Was the cause of the depression. You know, he certainly could have taken the depositions of these individuals, but to come into court with just rank speculation. And even if even if he Had uncovered some evidence that the workers had deviated from a plan. So what we had a two inch settlement. That's what we expected and the, the court can find here that even if we were negligent. And even if these decisions were not discretionary The two inch deviation developed and even according to plaintiff's expert admits that there really isn't a problem with the condition of the Road at the time of the accident. The problem was the lack of a sign and plaintiff admits were immune from that. So that's, that's all I have today. I thank you for your time. We respectfully request that the decision of the trial court be affirmed. All right. Thank you, Mr. Cook, Mr favor rebuttal. Thank you, Justice. In my brief I use the extreme example of the thought is Mr. Cook raised that we don't even know whether or not the crew might have might have thought the trench was a handy hole to dump a deer carcass. And I made that that very extreme example because Mr. Cook was speaking about speculation. Talk about speculation. He's just told the court that the crew was to use a backhoe. It was to use a truck to roll, but there is absolutely no evidence that they in fact I didn't take depositions of those that was crude because that wasn't my burden. We took a corporate representative deposition of Mr Mohan asking for any of the witnesses that had information or evidence with regard to the issues raised in the complaint. And the only witness presented by Edgar County. It was its strategic decision. And these are very fine lawyers, so they had a very good reason for making that decision. I'm sure was to present Mr Mohan And Justice Harris, if I may address the point that the court justice raised with regard to striking Mr Mohan's deposition. Or testimony is incompetent. It perhaps I'm an error in this conception, Justice, but since this is a day noble review by the appellate court. The, the issue that I raised under the rule of evidence, I believe, would be appropriate for this court to consider at the appellate level as well. Since this is a day noble proceeding. Thank you, Justice. Thank you, Mr favor. Or no other questions. The court will take this matter under advisement, the court stands and Yes, sir. One matter that I can raise with regard to a factual assertion just made by Mr favor. He said we only presented one other one witness. For corporate representative, we did in fact represent Mr Mohan at that that position. It was made very clear that Mr Mohan did not possess the universe of knowledge with respect to this project. And there are, you know, certainly things that he was not aware of. That apparently Mr favor is now claiming that we somehow precluded his ability to get this evidence from other witnesses. That was never the case. And we made everybody available that he would have wanted. He just didn't want to take any of the deposition. Thank you, Mr. Cook, as I said, the court will take this matter under advisement and the court is in recess. Thank you, counsel.